**SANFORD WITTELS & HEISLER, LLP**

1666 Connecticut Ave. Ste 310
Washington, D.C. 20009
Direct Dial: (202) 742-7780
Fax: (202) 742-7776
E-Mail: dsanford@nydclaw.com
www.nydclaw.com

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: JUN 16 2008

| | | |
|---|---|---|
| 18 Half Mile Road<br>Armonk, NY 10504<br>(914) 273-7314<br>Fax: (914) 273-2563 | 950 Third Avenue, 10th Floor<br>New York, NY 10022<br>(646) 723-2947<br>Fax: (646) 723-2948 | 440 West Street<br>Fort Lee, NJ 07024<br>(201) 585-5288<br>Fax: (201) 779-5233 |

June 6, 2008

**BY FACSIMILE**: (212) 805-6304
Hon. Paul A. Crotty
United States District Court
500 Pearl Street
New York, New York 10007-1312

[Handwritten endorsement: June 13, 2008 — There is no need for a conference on this matter. Plaintiffs may, if they wish, submit a memo of law (no longer than 10 pages) in support of their motion to exclude the expert testimony of Prendergast and Ashton. Defendant may respond to this amount, and plaintiffs' reply will be limited to 5 pages. If possible the briefing on this issue should be congruent with the schedule for the summary judgment motion. So ordered. Paul Crotty, USDJ]

Re:   **In re: Novartis Wage and Hour Litigation; 1:06 md 1794 (PAC)**

Dear Judge Crotty:

I write on behalf of Plaintiffs to request a conference regarding the exclusion of Defendant's expert witnesses, Canice Prendergast and William Ashton, pursuant to Rule 3(d).

**I.   Introduction**

In addressing the admissibility of expert witness testimony, the Second Circuit has affirmed the principles set forth in Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993), and later as applied to a non-scientific witness in Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999). See Amorgianos v. Amtrak, 303 F.3d 256, 266 (2d. Cir. 2002). Specifically, "the trial court must determine whether the proffered expert testimony is relevant, i.e., whether it ha[s] any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence, and whether the proffered testimony has a sufficiently reliable foundation to permit it to be considered." Campbell ex rel. Campbell v. Metropolitan Property and Casualty, Ins. Co., 239 F.3d 179 (2d Cir. 2001) (internal quotations and citations omitted). Defendant's expert witnesses fail to meet these requirements and their respective reports and testimony, therefore, should be barred.

**II.   Argument**

   **A.   Testimony of Canice Prendergast**

Canice Prendergast is the W. Allen Wallis Professor of Economics at the Graduate School of Business, University of Chicago. Dr. Prendergast holds a Ph.D. in Economics from Yale University and a Master Degree from the London School of Economics.

*MEMO ENDORSED*

Hon. Paul Crotty
June 6, 2008
Page 2

Defendant cites to Dr. Prendergast for the proposition that the pay structure of NPC Reps mirrors that of outside salespeople and, further, that Reps possess attributes similar to exempt administrators. See Defendant's 56.1 Statement ¶ 15. While Dr. Prendergast's qualifications as an economist are unquestioned here, his lack of familiarity with the practices and inner workings of NPC render his report and testimony irrelevant and unreliable to the action at bar. Examples of his unfamiliarity can be seen throughout his deposition. See Prendergast Dep. 98:1-6 (Dr. Prendergast acknowledges his inability to comment on the basis of compensation for individual Reps at NPC); see also id. at 117:17-118:1 (demonstrating Dr. Prendergast's uncertainty as to the difference in factors that enter into compensation packages for NPC managerial workers and Reps). Dr. Prendergast's statements demonstrate that he is not sufficiently knowledgeable of the activities performed by NPC Reps to present a reliable opinion. See Royal Ins. Co. of Am. v. Joseph Daniel Construction Inc., 208 F. Supp. 2d 423, 426 (S.D.N.Y. 2002) (investigation of the facts of a case is a prerequisite for reliability).

Moreover, even assuming *arguendo* that Dr. Prendergast was adequately informed with respect to the practices of Reps at NPC, his use of statistics to compare the compensation structures of Reps to outside sales workers does not represent the sort of information that would be helpful to a jury as required by Federal Rule of Evidence 702. Specifically, Dr. Prendergast's ability simply to note similarities or differences between the compensation structures of NPC Reps and outside sales workers is no different from that of a lay observer. See United States v. Cook, 922 F.2d 1026, 1036 (2d. Cir. 1991) (noting that expert testimony is "unnecessary where the jury is capable of comprehending the facts and drawing the correct conclusions from them"). Further, by drawing legal conclusions regarding Reps' status under the FLSA based on statistical analysis, Dr. Prendergast encroaches upon a question of law that is reserved exclusively for the Court to answer. The United States Supreme Court has already held that the final decision as to whether an employee meets the criteria for being exempt is to be made by the Court. Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 714 (1986).

In particular, Dr. Prendergast uses terms in his report that have a unique and specialized meaning apart from their colloquial use and thus have the potential to be misconstrued by a jury as offering a legal conclusion. On three separate occasions, Dr. Prendergast invokes the term "discretion" in analogizing the proffered similarities between NPC Reps and outside sales workers despite the fact that this term has a wholly distinct meaning when used in the DOL regulations.[1] This parroting of statutory language renders the expert's testimony and report inadmissible. United States v. Scop, 846 F.2d 135, 140-41, modified 856 F.2d 5 (2d Cir. 1988).

**B.   Testimony of William Ashton**

William Ashton currently serves as Dean of the Mayes College of Healthcare Business and Policy at the University of Sciences in Philadelphia. Prior to joining the University, Mr.

---

[1] For example, Dr. Prendergast states that "when considerable discretion by the employee is required, the employee is more likely to be rewarded by bonuses or commissions." Prendergast Report p. 4; see also Prendergast Report p. 5 (noting that the activities of sales force workers are required to exercise the type of discretion that is not easily monitored by direct supervision); see also Prendergast Report p. 12 (reiterating contention that NPC's compensation structure for its Reps is consistent with plans designed to induce employees to exercise discretion).

Ashton held the following positions at Amgen, Inc.: Director of Sales, Vice President of Sales, Business Unit Vice President and Vice President of Commercial Affairs and Reimbursement.

Defendant cites to Mr. Ashton's report on multiple occasions when describing the responsibilities and tasks performed by NPC Reps. See Defendant's 56.1 Statement ¶¶ 7, 8. Mr. Ashton's experiences in the pharmaceutical industry, however, are entirely unrelated and distinct from the practices of NPC. Mr. Ashton conceded as much when he testified that he was unaware how the activities performed by Reps at NPC differ from those performed by employees at Amgen or other pharmaceutical companies. Ashton Dep. 27:22-28:3; 67:6-14 (demonstrating Mr. Ashton's lack of understanding as to how NPC formulates quotas). Consequently, Mr. Ashton's attempts to analogize NPC to other pharmaceutical companies are mere conjecture and thereby fail to serve as a relevant or reliable source of information.

Mr. Ashton's report also improperly offers legal conclusions. In the same way that Dr. Prendergast misleadingly refers to the term "discretion" when describing the practices of NPC Reps, Mr. Ashton frequently refers to NPC Reps as "*sales reps*" throughout his report, a term of art under the FLSA. While at certain points Mr. Ashton attempts to clarify this denomination in an effort to illustrate the fact that NPC Reps do not actually sell pharmaceutical drugs, the prejudicial effect of invoking the statutory terms "sale" and "sell" is left intact. In other words, by repeatedly referring to Reps as salespeople, Mr. Ashton is effectively opining on a question of law that he is in no position to answer.

Finally, Mr. Ashton's report and testimony are barred by Federal Rule of Evidence 403 which provides for the exclusion of evidence when its probative value is outweighed by the danger of unfair prejudice. See also United States v. Dukagjini, 326 F.3d 45, 51-52 (2d. Cir. 2003) ("expert testimony, like all other forms of evidence, may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice"). Mr. Ashton's title of Dean of Mayes College of Healthcare improperly cloaks him with a veneer of authority, even with respect to legal matters such as an employee's exemption under the FLSA.

### III. Conclusion

For all of the above cited reasons, Plaintiffs respectfully request a conference for the purposes of barring Defendant's expert witnesses Canice Prendergast and William Ashton.

Please let us know at your earliest convenience whether this is acceptable.

Respectfully submitted,

David Sanford

cc: Richard Schnadig, Esq. (via e-mail)
Thomas Abram, Esq. (via e-mail)

# VEDDERPRICE

RICHARD H. SCHNADIG
312-609-7810
rschnadig@vedderprice.com

VEDDER PRICE P.C.
222 NORTH LASALLE STREET
CHICAGO, ILLINOIS 60601
312-609-7500
FAX: 312-609-5005

CHICAGO • NEW YORK CITY • WASHINGTON, DC • ROSELAND, NJ

June 11, 2008

## VIA FACSIMILE & U.S. MAIL

Hon. Paul A. Crotty
United States District Court
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

Re:   In re: Novartis Wage and Hour Litigation: 1:06 md 1794 (PAC)

Dear Judge Crotty:

We respond to Plaintiffs' June 6, 2008 letter to Your Honor requesting a conference regarding the exclusion of Defendant's expert witnesses, Professor Canice Prendergast and Dean William Ashton. Novartis Pharmaceuticals Corporation ("NPC"), of course, is ready to participate in such a conference if the Court desires. However, in NPC's opinion, the request is without merit and a conference unnecessary.

### Testimony of Professor Prendergast

Professor Prendergast testified solely in his capacity as an expert labor economist regarding compensation theory and his analysis of NPC compensation data. Unlike Plaintiffs' witness, Brian Farrington, Prof. Prendergast was scrupulous in clearly testifying that he was not offering any opinion (1) as to what NPC Sales Representatives actually do in the field or (2) whether NPC Sales Representatives qualified for the "outside sales" or "administrative" exemptions. Nor does NPC cite anywhere Prof. Prendergast's testimony to support a contention as to what NPC Sales Representatives do. Plaintiffs' assertion that Defendant's Statement of Facts ¶ 15 cites his testimony to show "that Reps possess attributes similar to exempt administrators" is wrong in every particular. Paragraph 15 solely summarizes the testimony of Prof. Prendergast as to why companies use incentive bonuses as part of total compensation for field sales workers working without direct supervision. The citation is in support of NPC's contention that its Sales Representatives are exempt under the "outside sales" exemption. It has nothing to do with the question of whether Sales Reps are also, or in the alternative, exempt under the "administrative" exemption. Because Prof. Prendergast does not purport to opine on what NPC's Sales Representatives do, his lack of personal knowledge is irrelevant as is the case

CHICAGO/#1802612.2

VEDDERPRICE

Hon. Paul A. Crotty
June 11, 2008
Page 2

cited by Plaintiffs, *Royal Ins. Co. of Am. v. Joseph Daniel Construction, Inc.*, 208 F. Supp. 2d 423, 426 (S.D.N.Y. 2002).

Plaintiffs frivolously assert that Prof. Prendergast is somehow making legal conclusions because he used the term "discretion" in his report. However, as above discussed, he clearly disavowed any expertise in interpreting applicable FLSA law and his report uses the term "discretion" exclusively as a term of art within his expertise on compensation theory and practices based on his own and others' peer reviewed academic research (with extensive footnote citation). This is far different than the "parroting of statutory language" engaged in by Plaintiffs' witness Farrington and rightfully disallowed by the Second Circuit in *United States v. Scop*, 846 F.2d 135, *modified*, 856 F.2d 5 (2d Cir. 1988).

Equally and finally meritless is Plaintiffs' contention that Prof. Prendergast's analysis of NPC compensation data should not be admitted because it does not constitute expert testimony that would be helpful to the jury. Prof. Prendergast's statistical analysis directly supports his explanation of compensation theory. His opinion that NPC's compensation policies for its Sales Representatives (which he personally reviewed) comport with economic theory and reported empirical analyses of how companies pay outside sales workers. As shown in NPC's memoranda in support of its motion for summary judgment and in opposition to Plaintiffs' motion, demonstrating that an employee is paid for his efforts as an outside sales worker is an important factor in determining whether the "outside sales" exemption applies. Accordingly, Prof. Prendergast's expert testimony is without question relevant and helpful and necessary to interpret his compensation analysis.

### Testimony of William Ashton

Plaintiffs' argument that William Ashton's testimony should be excluded is likewise groundless. Dean Ashton, as did Prof. Prendergast, forthrightly acknowledged that he had not observed NPC's Sales Reps in the field and is offering no opinion as to what they, in fact, do. Dean Ashton, however, clearly is an expert on general sales practices in the pharmaceuticals industry based on his many years of sales management in the industry, his service on the National Pharmaceuticals Council (where he discussed common industry issues with sales leaders, including NPC attendees) and his consulting and academic work. Dean Ashton is fully competent to testify as to industry sales force practices and, based on his prior acquired knowledge of NPC's sales force and his personal review of NPC training, performance evaluation and compensation documents, to opine regarding the extent to which NPC's own policies are similar to such practices. Dean Ashton's testimony, cited in Defendant's Statement of Facts ¶¶ 7 and 8, is solely for this purpose and, contrary to Plaintiffs' assertion, well within his

**VEDDERPRICE**

Hon. Paul A. Crotty
June 11, 2008
Page 3

competence to provide an expert opinion.[1] By contrast, Dean Ashton was careful not to testify beyond his personal knowledge and expertise as to how NPC Sales Representatives went about performing their jobs in the field. Further undercutting Plaintiffs' exclusionary argument is that they themselves cite Dean Ashton's testimony for purposes of showing what NPC Sales Representatives do in many places in their own Statement of Facts in Support. *See, e.g.*, Plaintiffs' Statement of Facts ¶¶ 4, 7, 11, 12, 29, 30, 62, 63, 76. They, therefore, cannot be heard to challenge Dean Ashton's testimony on this basis.

Plaintiffs claim that Dean Ashton is improperly offering legal conclusion is as meritless as their similar claim with respect to Prof. Prendergast for the same reasons.

Last, Plaintiffs' suggestion that Dean Ashton's testimony would be unfairly prejudicial is baseless and the case cited in support, *United States v. Dukagjim*, 326 F.3d 45 (2d Cir. 2003) (actually <u>allowing</u> the testimony of an expert on drug dealing "code word" in a criminal trial), is inapposite.

In sum, Plaintiffs have failed to present any substantive reasons why this Court should entertain a *Daubert* motion with respect to NPC's expert witnesses and, with deference, NPC suggests that a conference is unnecessary.

Respectfully yours,

Richard H. Schnadig

RHS/jbd

cc:  David W. Sanford
     Angela Corridan
     Steven L. Wittels
     Grant Morris
     (all via e-mail and U.S. Mail)

---

[1] Plaintiffs' claim that Dean Ashton lacked sufficient knowledge about NPC's practices to draw any comparisons is refuted by the very deposition passages they cite and Dean Ashton elaborated on the extensive basis of his knowledge about NPC's policies and practices. *See, e.g.* Ashton Dep.: 34:6-25, 35:1-25, 36:1-13, 65:18-25, 68:15-25, 91:10-23, 93:7-14, 113:4-22.