**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| **In re Novartis Wage and Hour Litigation** |

06-MD-1794 (PAC)

## SETTLEMENT AGREEMENT AND RELEASE

Table of Contents

                                                                                    Page
I.      Introduction.................................................................................................1
II.     Definitions...................................................................................................1
III.    Nature and Resolution of this Case.........................................................13
IV.     Non-Admission of Liability.....................................................................17
V.      Mutual Full Cooperation..........................................................................19
VI.     Releases......................................................................................................19
VII.    Total Settlement Amount..........................................................................21
VIII.   Settlement Fund ........................................................................................21
IX.     Attorneys' Fees, Administrative Expenses and Service Award Payments............23
X.      Individual Monetary Awards to Settlement Class Members ....................27
XI.     Claims Administration..............................................................................29
XII.    Novartis's Right to Withdraw or Modify the Agreement.........................38
XIII.   Duties of the Parties Prior to Court Approval..........................................38
XIV.    Duties of the Parties In Connection With Final Court Approval.............39
XV.     Parties' Authority......................................................................................40
XVI.    Notices ......................................................................................................41
XVII.   Confidentiality and Public Comment.......................................................41
XVIII.  Modification..............................................................................................44
XIX.    Entire Agreement......................................................................................44
XX.     Interpretation............................................................................................44
XXI.    Choice of Law and Jurisdiction ...............................................................44
XXII.   Counterparts..............................................................................................45
XXIII.  Voiding the Agreement.............................................................................45

## I.     INTRODUCTION

Subject to final approval by the United States District Court for the Southern District of New York, this Settlement Agreement and Release sets forth the full and final terms by which the Class Representatives Simona M. Lopes, Catherine E. White, Minel A. Hider-Tobertga, Terri Kelly and Kelli Shannon (collectively "Class Representatives" or "Named Plaintiffs"), on behalf of a settlement class of themselves and current and former sales force employees of Novartis Pharmaceuticals Corporation ("Novartis") (collectively, the "Settlement Class"), represented by their attorneys, **Sanford Wittels & Heisler, LLP** and Defendant Novartis, represented by its attorneys **Cravath, Swaine & Moore LLP** and **Kaye Scholer LLP**, have settled and resolved all claims that have been raised or could have been raised in the litigation captioned *In re Novartis Wage and Hour Litigation*, Case No. 06-MD-1794 (PAC), before District Judge Paul A. Crotty in the United States District Court for the Southern District of New York (Second Amended Complaint filed on January 25, 2012).

## II.    DEFINITIONS

The terms described below shall have the meanings defined in this Section wherever used in this Agreement and for the purposes of this Agreement only, including in the Notices of Class and Collective Action Settlement.

2.1     "Settlement Agreement," "Settlement" or "Agreement" means this Settlement Agreement and Release and all Exhibits attached hereto.

2.2     The "Civil Action" means the litigation captioned *In re Novartis Wage and Hour Litigation*, Case No. 06-MD-1794 (PAC), before Judge Paul A. Crotty in the United States District Court for the Southern District of New York (Second Amended Complaint filed on January 25, 2012).

1

2.3     "California Settlement Sub-Class I" or "California I" means each person who worked for Novartis in the State of California as a full or part-time, active Sales Representative or Sales Consultant, including all non-manager job progressions from, and variations in, the Sales Representative and Sales Consultant titles in all Novartis Sales Division or Business Units, including Mass Market, Specialty and Select Field Forces for at least one day during the period March 23, 2002 through April 7, 2007 and who did not timely opt out of the Civil Action in 2007 (together the "California Settlement Sub-Class I Members" and each such person, a "California Settlement Sub-Class I Member").   All California Settlement Sub-Class I Members are Proposed Settlement Class Members and Settlement Class Members as defined in Paragraph 2.38.   A Proposed Settlement Class Member is a California Settlement Sub-Class I Member only for the period in which he or she worked for Novartis in a Class-Eligible Job in the State of California.

2.4     California Settlement Sub-Class I Eligibility Period" means March 23, 2002 through April 7, 2007.

2.5     "California Settlement Sub-Class I Payment and Release Period" means March 23, 2002 through the Final Approval Date.

2.6     "Claims Administrator" means Rust Consulting.

2.7     "Class Monetary Award Fund" means the Settlement Fund less distributions pursuant to Sections IX.A and IX.C, from which individual monetary awards are paid to Proposed Settlement Class Members.

2.8     "Class Counsel" means the law firm of Sanford Wittels & Heisler, LLP.

2.9 .    "Class-Eligible Job" means a full-time, active Novartis Sales Representative or Sales Consultant (except in California, Alaska and Puerto Rico, in which

a "Class Eligible Job includes full and part-time active Novartis Sales Representatives and Sales Consultants), including all non-manager job progressions from, and variations in, the Sales Representative and Sales Consultant titles in all Novartis Sales Divisions or Business Units, including Mass Market, Specialty and Select Field Forces, during any of the applicable Settlement Sub-Class Eligibility or Payment and Release Periods (as defined in ¶¶ 2.4, 2.5, 2.19, 2.20, 2.22, 2.23, 2.26, 2.27, 2.35 and/or 2.36).

2.10    "Class Representatives" or "Named Plaintiffs" means Simona M. Lopes, Catherine E. White, Minel A. Hider-Tobertga, Terri Kelly and Kelli Shannon.

2.11    "Counsel for Novartis" or "Counsel for Defendant" means the law firms of Cravath, Swaine & Moore LLP and Kaye Scholer LLP.

2.12    The "Court" means the United States District Court for the Southern District of New York.

2.13    "Defendant," the "Company" or "Novartis" means Novartis Pharmaceuticals Corporation.

2.14    "Effective Date" means the date upon which all of the following have occurred: (1) the Court has entered an Order certifying the Settlement Class; (2) the Court has entered an Order or Orders granting Final Approval to the Agreement, approving the amount of attorneys' fees and dismissing the Civil Action with prejudice; and (3) the time for appeal has expired without any appeal, writ or other appellate proceeding having been filed and/or if one or more appeals is taken, the final outcome of the appeal(s) results in affirmance of the Court's Final Approval Order of the Settlement Agreement.

2.15    "Final Approval Date" or "Final Approval" means entry (and date thereof) by the Court of the Final Approval Order for this Settlement.

3

2.16    "Final Fairness Hearing" means the hearing held by the Court to consider whether the Settlement is fair, reasonable, and adequate and whether to give final approval to this Settlement.

2.17    "FLSA" means the "Fair Labor Standards Act", 29 U.S.C. § 201 et seq. (1938).

2.18    "FLSA Settlement Sub-Class I" or "FLSA I" means each person who worked for Novartis as a full-time, active Sales Representative or Sales Consultant, including all non-manager job progressions from, and variations in, the Sales Representative and Sales Consultant titles in all Novartis Sales Divisions or Business Units, including Mass Market, Specialty and Select Field Forces for at least one day during the period March 23, 2003 through April 7, 2007 and who filed Consent to Join as Party Plaintiff forms in the Civil Action in 2007 and June 2008 (together the "FLSA Settlement Sub-Class I Members" and each such person, a "FLSA Settlement Sub-Class I Member"). All FLSA Settlement Sub-Class I Members are Proposed Settlement Class Members and Settlement Class Members as defined in Paragraph 2.38.

2.19    "FLSA Settlement Sub-Class I Eligibility Period" means March 23, 2003 through April 7, 2007.

2.20    "FSLA Settlement Sub-Class I Payment and Release Period" means March 23, 2003 through the Final Approval Date.

2.21    "FLSA Settlement Sub-Class II" or "FLSA II" means each person who worked for Novartis in the States of Alabama, Arizona, Colorado, Delaware, Florida, Georgia, Hawaii, Idaho, Indiana, Iowa, Kansas, Louisiana, Michigan, Mississippi, Nebraska, New Hampshire, North Carolina, Oklahoma, South Carolina, South Dakota,

Tennessee, Texas, Utah, Virginia, West Virginia or Wyoming as a full-time, active Sales Representative or Sales Consultant, including all non-manager job progressions from, and variations in, the Sales Representative and Sales Consultant titles in all Novartis Sales Divisions or Business Units, including Mass Market, Specialty and Select Field Forces for at least one day during the period January 25, 2009 through the Preliminary Approval Date and who timely opt in to the Settlement by submitting an Opt In and Release Form (Exhibit X) and who are **not** FLSA Settlement Sub-Class I Members, California Settlement Sub-Class I Members, New York Settlement Sub-Class I Members, or Remaining States Settlement Sub-Class Members (together the "FLSA Settlement Sub-Class II Members" and each such person, a "FLSA Settlement Sub-Class II Member").  All FLSA Settlement Sub-Class II Members are Proposed Settlement Class Members and Settlement Class Members as defined in Paragraph 2.38.

2.22      "FLSA Settlement Sub-Class II Eligibility Period" means January 25, 2009 through the Preliminary Approval Date.

2.23      "FLSA Settlement Sub-Class II Payment and Release Period" means January 25, 2009 through the Final Approval Date.

2.24      "HCE Months" means the number of months worked by a Settlement Class Member during a calendar year in which he or she is susceptible to the highly-compensated employee exemption from overtime pay under applicable federal or state law.

2.25      "New York Settlement Sub-Class I" or "New York I" means each person who worked for Novartis in the State of New York as a full-time, active Sales Representative or Sales Consultant, including all non-manager job progressions from, and variations in, the Sales Representative and Sales Consultant titles in all Novartis Sales

Divisions or Business Units, including Mass Market, Specialty and Select Field Forces for at least one day during the period March 23, 2000 through April 7, 2007 and who did not timely opt out of the Civil Action in 2007 (together the "New York Settlement Sub-Class I Members" and each a "New York Settlement Sub-Class I Member"). All New York Settlement Sub-Class I Members are Proposed Settlement Class Members and Settlement Class Members as defined in Paragraph 2.38. A Proposed Settlement Class Member is only a New York Settlement Sub-Class I Member for the period in which he or she worked for Novartis in a Class-Eligible Job in the State of New York.

2.26    "New York Settlement Sub-Class I Eligibility Period" means March 23, 2000 through April 7, 2007.

2.27    "New York Settlement Sub-Class I Payment and Release Period" means March 23, 2000 through the Final Approval Date.

2.28    "Non-HCE Months" means months worked by a Settlement Class Member during which there is no potential highly-compensated employee defense due to the applicable law in the employee's Work State or the employee's annual compensation.

2.29    "Notices of Class and Collective Action Settlement" means the notices attached hereto as Exhibits A-C,  The Notices of Class and Collective Action Settlement shall be provided to the Proposed Settlement Class in accordance with Section XI.B.

2.30    "Parties" means the Class Representatives, Settlement Class Members and Defendant.

2.31    "Preliminary Approval Date" means the date of entry by the Court of the Preliminary Approval Order.

2.32    "Preliminary Approval Order" means the Order entered by the Court preliminarily approving the terms of this Agreement, certifying the Settlement Class, and preliminarily approving the payment of attorneys' fees and Service Award Payments, as described in this Agreement, scheduling a "Final Fairness Hearing," and directing the mailing to the Proposed Settlement Class of the Notices of Class and Collective Action Settlement.

2.33    "Released Claims" means any and all past or present claims or causes of action (including any suits, petitions, demands or other claims in law, equity or arbitration), and any and all allegations of liability or damages, of whatever kind, nature or description, direct or indirect, in law, equity, arbitration or administrative actions and proceedings, absolute or contingent, whether class, collective, administrative or individual in nature, including both known claims and Unknown Claims, asserted or unasserted, for monetary and non-monetary relief (including without limitation attorneys' fees, costs or disbursements incurred by the Class Representatives and/or Proposed Settlement Class Members or their counsel in connection with or related to the Civil Action), that were or could have been asserted by the Class Representatives and/or Proposed Settlement Class Members against Novartis, its parents, subsidiaries, affiliates, predecessors, successors and/or assigns and in the case of all such entities, their respective past and present owners, representatives, officers, directors, attorneys, agents, employees, employees, fiduciaries, employee benefit plan administrators, privies and insurers (collectively defined as the "Released Parties"), based upon or arising out of the same events, transactions, series of connected transactions, occurrences or nucleus of operative facts that form the basis of the claims that were or could have been asserted in the Civil Action, including any and all

7

claims asserted in the original and subsequently amended complaints filed in the Civil Action (including the *White* and *Lopes* Actions), from the beginning of time through Final Approval of the Settlement Agreement. This Release includes all claims based upon or arising out of the conduct alleged in the Complaint (including all Amended Complaints, specifically including the Second Amended Complaint filed January 25, 2012) or within the record. This Release includes any and all past or present claims or causes of action (including any suits, petitions, demands or other claims in law, equity or arbitration), and any and all allegations of liability or damages, of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, whether class or individual in nature, including both known claims and Unknown Claims, asserted or unasserted, for monetary and non-monetary relief (including without limitation attorneys' fees, costs or disbursements incurred by the Class Representatives and/or Proposed Settlement Class Members or their counsel in connection with the Civil Action), that were or could have been asserted by the Class Representatives and/or Proposed Settlement Class Members against the Released Parties based upon, or arising in any way out of the litigation of the Civil Action, provided however that nothing contained herein shall prevent any Party to this Settlement Agreement from initiating a legal action to enforce any term or provision of this Settlement Agreement. Specifically included in this Release are any and all claims, including both known claims and Unknown Claims, that were or could have been asserted in the Civil Action or are arising out of the same transactions, series of connected transactions, occurrences or nucleus of operative facts that form the basis of the claims, including both known claims and Unknown Claims, that were or could have been asserted in the Civil Action, including but not limited to, claims relating to the non-payment of

overtime or wages, any wage and hour claims under applicable state, federal or local law, including without limitation the failure to provide meal periods and/or compensation for meal periods, the failure to provide rest breaks and/or compensation for rest breaks, the failure to provide itemized wage statements, the failure to maintain and keep accurate records, the failure to timely pay employees during or at the conclusion of their employment, the failure to provide compensation for "off-clock" time under any applicable federal, state or local statute, common law or regulation, the failure to pay penalties relating to non-payment of overtime under any provision of any applicable federal, state or local statute, common law, or regulation, including without limitation all claims for restitution and other equitable or declaratory relief, liquidated damages, compensatory damages, punitive damages, wages, waiting time penalties, penalties of any nature whatsoever, interest, reimbursement of expenses, other compensation or benefits, including 401K benefits or matching benefits, retirement or deferred compensation benefits claims on account of unpaid wages and/or overtime and any other benefit or compensation that would accrue on account of time worked, whether known or unknown, arising from the Proposed Settlement Class Members' employment at Novartis.

2.34    "Remaining States Settlement Sub-Class" means each person who worked for Novartis in the States of Arkansas, Connecticut, Illinois, Kentucky, Maine, Maryland, Massachusetts, Minnesota, Missouri, Montana, Nevada, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oregon, Pennsylvania, Rhode Island, Vermont, Washington, Wisconsin and/or the District of Columbia as a full-time, active Sales Representative or Sales Consultant, or in the States of Alaska, California or Puerto Rico as a full or part-time, active Sales Representative or Sales Consultant, including all non-manager

job progressions from, and variations in, the Sales Representative and Sales Consultant titles in all Novartis Sales Divisions or Business Units, including Mass Market, Specialty and Select Field Forces during the Remaining States Settlement Sub-Class Eligibility Periods as defined in Paragraphs 2.35 and who are not FLSA Settlement Sub-Class I Members, California Settlement Sub-Class I Members or New York Settlement Sub-Class I Members (together the "Remaining States Settlement Sub-Class Members" and each a "Remaining States Settlement Sub-Class Member." All Remaining States Settlement Sub-Class Members are Proposed Settlement Class Members and Settlement Class Members as defined in Paragraph 2.38. A Proposed Settlement Class Member is only a Remaining States Settlement Sub-Class Member for the period in which he or she worked for Novartis in a Class-Eligible Job in the states, district or territories listed in this Paragraph.

2.35    "Remaining States Settlement Sub-Class Eligibility Period" means the following for these Work States:

| Work States | Remaining States Settlement Sub-Class Eligibility Period |
| --- | --- |
| Alaska, Arkansas, Connecticut, Illinois, Maryland, Massachusetts, Minnesota, Missouri, Montana, Nevada, New Jersey, New Mexico, North Carolina, North Dakota, Ohio, Oregon, Pennsylvania, Rhode Island, Washington, Wisconsin, District of Columbia and Puerto Rico | March 23, 2008 through the Preliminary Approval Date |
| California and New York | April 8, 2007 through the Preliminary Approval Date |
| Kentucky | March 23, 2006 through the Preliminary Approval Date |
| Maine and Vermont | March 23, 2005 through the Preliminary Approval Date |

10

2.36 "Remaining States Settlement Sub-Class Payment and Release Period" means the following for these Work States:

| Work States | Remaining States Settlement Sub-Class Payment and Release Period |
|---|---|
| Alaska, Arkansas, Connecticut, Illinois, Maryland, Massachusetts, Minnesota, Missouri, Nevada, New Jersey, New Mexico, North Carolina, North Dakota, Ohio, Oregon, Pennsylvania, Rhode Island, Washington, Wisconsin and District of Columbia | March 23, 2008 through the Final Approval Date |
| California and New York | April 8, 2007 through the Final Approval Date |
| Kentucky | March 23, 2006 through the Final Approval Date |
| Maine and Vermont | March 23, 2005 through the Final Approval Date |
| Montana and Puerto Rico | For Remaining States Settlement Sub-Class Members employed by Novartis in a Class-Eligible Job as of the Preliminary Approval date:  March 23, 2008 through the Final Approval Date;<br><br>For Remaining States Settlement Sub-Class Members not employed by Novartis in a Class-Eligible Role as of the Preliminary Approval Date:  The period comprising each individual Settlement Sub-Class Member's final three years of employment at Novartis in a Class-Eligible Job |

2.37 The "Settlement Class" means a class certified by the Court for settlement purposes pursuant to the FLSA and Federal Rule of Civil Procedure 23(b)(3) consisting of all Proposed Settlement Class Members in the FLSA I, FLSA II, New York I, California I, and Remaining States Settlement Sub-Classes.

2.38     "Settlement Class Members" or "Proposed Settlement Class Members" means all individuals who meet the definition of the FLSA I, FLSA II, New York I, California I and/or Remaining States Settlement Sub-Classes and who together comprise the "Settlement Class".

2.39     The "Term of the Settlement Agreement" shall be defined as March 23, 2000 through the Effective Date, but eligibility of Settlement Class Members for class monetary awards and the applicable payment and release period shall be based on the periods set forth in Paragraphs 2.4, 2.5, 2.19, 2.20, 2.22, 2.23, 2.26, 2.27, 2.35 and/or 2.36.

2.40     "Unknown Claims" means any and all Released Claims that any Named Plaintiff or Proposed Settlement Class Member does not know or suspect to exist in his or her favor at the time of the release of the Released Parties, which if known by him or her might have affected his or her decision(s) with respect to the Settlement.  With respect to any and all Released Claims, the Parties stipulate and agree that upon the Effective Date, the Named Plaintiffs shall expressly waive, and each Proposed Settlement Class Member shall be deemed to have waived, and by operation of the Final Approval Order shall have expressly waived, any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

Class Representatives and Defendant acknowledge, and all other Proposed Settlement Class Members by operation of law shall be deemed to have acknowledged, that the inclusion of

12

"Unknown Claims" in the definition of Released Claims was separately bargained for and was a key element of the Settlement.

2.41    "Work State" for each calendar year means the state, district or territory in which the Proposed Settlement Class Member conducts the majority of his or her business for Novartis, as determined by Novartis's Policy for Determining Employee's Work State for the purpose of determining where a Novartis employee earns his or her wages in compliance with tax regulations and company tax policies.  For the purpose of distributing the Class Monetary Award Fund pursuant to the procedures described herein, a Proposed Settlement Class Member has only one (1) Work State per calendar year, but his or her Work State may vary for different calendar years.

## III.    NATURE AND RESOLUTION OF THIS CASE

3.1    Named Plaintiff Simona M. Lopes filed a Class Action and Collective Action Complaint against Novartis in the United States District Court for the Southern District of New York on March 23, 2006, and filed a First Amended Class Action and Collective Action Complaint on May 9, 2006, *Lopes, et al. v. Novartis Corporation, et al.*, Case No. 06 CV 2268 (PAC) ("*Lopes* Action").  The *Lopes* Action asserted collective action claims under the FLSA and class claims under New York Labor Law.

3.2    Named Plaintiffs Catherine E. White and Minel A. Hider-Tobertga filed a Class Action Complaint against Novartis in Superior Court of the State of California for the County of Los Angeles on March 23, 2006.  The action was removed by Novartis to the United States District Court for the Central District of California on May 5, 2006, *White, et al. v. Novartis Pharmaceuticals Corporation, et al.*, Case No. CV06-2764 (FFMx) ("White Action").  The *White* Action asserted class claims under the California Labor Code, the California Business and Professions Code and the California Code of Regulations.

13

3.3     On October 30, 2006, the *Lopes* and *White* Actions were consolidated by the Judicial Panel on Multidistrict Litigation for pretrial proceedings in the United States District Court for the Southern District of New York as *In Re Novartis Wage and Hour Litigation*, Case No. 06-MD-1794 (PAC). The *White* Action Named Plaintiffs filed a First Amended Complaint and Demand for Jury Trial in the Southern District of New York on February 1, 2007. The consolidated collective and class action lawsuit asserted claims that Novartis sales representatives are entitled to overtime pay under the FLSA and corresponding New York and California wage and hour labor laws.

3.4     On February 15, 2007, the Court certified a collective action pursuant to the FLSA and New York and California class actions pursuant to Federal Rule of Civil Procedure 23(b)(3) and ordered the issuance of notices of the collective and class actions lawsuits on or before April 7, 2007. The Notice of FLSA collective action certification was addressed to all individuals who were employed within certain sales-related positions at Novartis during the period March 23, 2003 to April 7, 2007, and enclosed a "Consent to Participate as Party Plaintiff" form to be submitted to opt in to the Civil Action as a party to the FLSA collective action. The Notice of New York class action certification was addressed to all individuals who were employed within certain sales-related positions at Novartis in the State of New York during the period March 23, 2000 to April 7, 2007, and enclosed a Request for Exclusion form for individuals to submit to be excluded from the Civil Action. The Notice of California class action certification was addressed to all individuals who were employed within certain sales-related positions at Novartis in the State of California during the period March 23, 2002 to April 7, 2007 and enclosed a Request for Exclusion form to be submitted to be excluded from the Civil Action.

14

3.5     In 2007-2008, 674 plaintiffs opted in as parties to the FLSA collective action by filing a Consent to Participate as Party Plaintiff form.   Approximately 75 individuals in New York and California opted out of the Civil Action by filing a timely Request for Exclusion form.

3.6     On December 21, 2007 the Parties stipulated and consented to litigate the consolidated Civil Action in the Southern District of New York after the completion of pretrial proceedings and waived remand to the originating courts.

3.7     On May 2, 2008, Novartis moved for summary judgment, asserting that its sales representatives are exempt from the overtime compensation requirements set forth in the FLSA and corresponding New York and California labor laws.   On May 6, 2008, Plaintiffs cross-moved for summary judgment.   On January 12, 2009, the Court granted Novartis's motion for summary judgment, ruled that Novartis's sales representatives are exempt from overtime compensation under the outside sales and administrative exemptions of the FLSA and New York and California wage and hour laws, and directed the Clerk of the Court to enter judgment and terminate the Civil Action.

3.8     Plaintiffs appealed the Court's grant of summary judgment in favor of Novartis to the United States Court of Appeals for the Second Circuit.   On July 6, 2010, the Second Circuit Court of Appeals vacated and remanded the Court's summary judgment decision and held that Novartis's sales representatives are not   exempt from overtime compensation under either the outside sales or administrative exemptions of the FLSA, New York or California wage and hour laws.

15

3.9     On October 4, 2010, Novartis filed a petition for *certiorari* to the United States Supreme Court, requesting review of the Second Circuit's decision. On February 28, 2011, the United States Supreme Court denied Novartis's petition for *certiorari*.

3.10     On March 1, 2011, the Second Circuit Court of Appeals issued a mandate remanding the Civil Action to the district court for a jury trial principally on the amount of back overtime damages owed by Novartis to plaintiffs.

3.11     The Court granted the Parties request for a stay of proceedings to permit the Parties to pursue settlement discussions, and the Parties engaged in extensive arms-length settlement negotiations for over ten months. The Parties' discussions related not only to the claims originally asserted in the Civil Action in 2006, but also claims covering the period after the Court certified a class and collective action in 2007 and in states other than New York and California. Each Party, by their attorneys, conducted a thorough and extensive investigation of the relevant facts and circumstances underlying the issues raised in the Civil Action, including issues specifically relating to the exempt status of and overtime worked by Novartis's sales force employees. As a result of those negotiations, in September 2011 the Parties reached an agreement in principle to resolve all claims asserted in the 2006 Complaints and Amended Complaints in the *Lopes* and *White* Actions. In January 2012, the Parties reached a broader agreement to resolve all claims asserted in the January 25, 2012 Second Amended Complaint. The Parties then entered into this Settlement Agreement to resolve any and all federal and state wage and hour claims under applicable laws. The Parties agree that the settlement described in this Agreement is fair, reasonable and adequate. Class Counsel and the Class Representatives represent that the settlement set forth in this Settlement Agreement is the product of vigorous and lengthy

negotiations and serves the best interest of the Proposed Settlement Class based on all the facts and circumstances because it provides certain, prompt and extensive relief for the Proposed Settlement Class and avoids the risks associated with future litigation, specifically including the uncertainty surrounding the pending Supreme Court decision in *Christopher, et al. v. SmithKlineBeecham Corp.*, No. 11-204 (U.S. cert. granted Nov. 28, 2011; to be argued April 16, 2012).

3.12     It is the intention of the Parties to fully, finally, and forever settle, compromise, and discharge all disputes and claims of the Proposed Settlement Class, whether asserted or unasserted, based on, arising from or related in any way to the Civil Action, for the period up to the Effective Date.

3.13     It is the intention of the Parties that this Agreement shall constitute a full and complete settlement and release of all claims of the Proposed Settlement Class against the Defendant that were or could have been asserted as based on or arising from the Civil Action, and that the Civil Action shall be dismissed with prejudice.

## IV.     NON-ADMISSION OF LIABILITY

4.1     Defendant denies all claims as to liability, wrongdoing, damages, penalties, interest, fees, injunctive relief and all other forms of relief, as well as the class and collective allegations asserted in the Civil Action, including the *Lopes* and *White* Actions. Defendant denies, among other things, that it has improperly classified its sales force employees as exempt from overtime compensation, failed to pay wages or overtime compensation to its sales force employees, or that it otherwise violated its legal obligations. Defendant believes in good faith that its sales representatives have always been and continue at the present time to be properly classified as exempt from federal and state overtime requirements and not owed any overtime compensation.

17

4.2      Defendant has agreed to resolve the Civil Action in this Agreement because it will halt the substantial expense, inconvenience and distraction of continued litigation of Proposed Settlement Class Members' claims and fully and finally resolve and discharge any all disputes and claims of the Proposed Settlement Class, but to the extent this Agreement is deemed void or the Effective Date does not occur, Defendant does not waive, but rather expressly reserves, all rights to challenge any and all claims and allegations asserted by the Class Representatives in the Civil Action upon all procedural and substantive grounds, including to assert any and all potential defenses or privileges and to assert that its sales force employees do not work overtime.

4.3      The Class Representatives and Class Counsel agree that Defendant retains and reserves the rights in Paragraph 4.2, and they agree not to take a position to the contrary.  Specifically, the Class Representatives and Class Counsel agree that, if the Civil Action were to proceed, they will not present any argument based on this Settlement or Settlement Agreement, or any exhibit, attachment, act performed or document executed pursuant to the settlement described in this Agreement.

4.4      Novartis asserts that it has made sufficient changes to the job responsibilities of its sales force employees since the close of discovery in the *Lopes* and *White* Actions such that the job duties of Novartis's current sales force as of the date of this Settlement Agreement meet the requirements of the FLSA administrative exemption, including without limitation the requirement that the sales force employees' primary duties include "the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a).]  The Class Representatives and Class Counsel take no position on this question, but recognize that proceeding with litigation could risk a ruling

18

in Defendant's favor on the administrative exemption for the Settlement Class Members defined in ¶¶ 2.5, 2.21, 2.23, 2.27 and 2.34, whose claims arise on or after April 8, 2007.

4.5     Additionally, neither the settlement described in this Agreement, nor the Agreement itself, nor any act performed or document executed pursuant to, or in furtherance of the Settlement: (a) is or may be deemed to be or may be used as an admission or evidence of the validity of any Released Claim, or of any wrongdoing or liability of the Released Parties, or any of them; or (b) is or may be deemed to be or may be used as an admission or evidence of any fault or omission of the Released Parties, or any of them, in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal.

4.6     Neither this Agreement nor anything in it, nor any part of the negotiations that occurred in connection with the creation of the settlement described in this Agreement, shall constitute evidence with respect to any issue or dispute in any pending or future lawsuit, legal proceeding or administrative proceeding, except for legal proceedings concerning the implementation, interpretation or enforcement of this Agreement.

## V.     MUTUAL FULL COOPERATION

5.1     The Parties agree that they will fully cooperate with each other to effectuate and implement all terms and conditions of this Settlement Agreement, including without limitation taking all necessary and appropriate steps to dismiss the Civil Action with prejudice and exercise good faith efforts to accomplish the terms and conditions of this Settlement Agreement.

## VI.    RELEASES

6.1     Upon the Effective Date of this Settlement Agreement, in consideration for the agreements by the Parties and other good and valuable consideration, the receipt and

sufficiency of which is hereby acknowledged, all Named Plaintiffs and each and every member of the Proposed Settlement Class, on behalf of themselves, their heirs, executors, administrators, predecessors, successors and assigns shall hereby release, remise and forever discharge the Released Parties (as defined above) from each and every Released Claim (as defined in Paragraph 2.23 above), and shall forever be barred and enjoined from initiating, continuing, filing or otherwise prosecuting any Released Claim against any of the Released Parties and their counsel.  This Release shall apply to each and every Proposed Settlement Class Member whether or not such individual actively participated in the Civil Action or Settlement.

6.2     Every Proposed Settlement Class Member, as defined above, shall be deemed to and shall have knowingly and voluntarily waived, released, discharged and dismissed the Released Claims, with full knowledge of any and all rights they may have, and they hereby assume the risk of any mistake in fact in connection with the true facts involved, or with regard to any facts which are now unknown to them.  Every Proposed Settlement Class Member, as defined above, shall be deemed to and shall have knowingly and voluntarily agreed not to institute, or accept any other relief from any other suit, class or collective action, administrative claim or other claim of any sort or nature whatsoever against Novartis, relating to the Released Claims being settled herein for any period up to and including the Final Approval Date.

6.3     The Parties and Proposed Settlement Class Members acknowledge that the covenants and promises made by Novartis herein constitute adequate consideration in exchange for the Released Claims.

6.4     Nothing in this Settlement Agreement shall be construed to bar any claims of Proposed Settlement Class Members or the Class Representatives based on or arising out of events occurring after the Final Approval Date.

## VII.   TOTAL SETTLEMENT AMOUNT

7.1     The "Total Settlement Amount," in full and complete satisfaction of all Released Claims, shall be ninety-nine million dollars ($99,000,000.00) (the "Settlement Fund").

7.2     Subject to Court approval, the Settlement Fund will be provided to the Claims Administrator to be distributed as described in Sections VIII, IX, X and XI of this Agreement.

## VIII.   SETTLEMENT FUND

8.1     No later than twenty (20) calendar days after the Effective Date, Novartis shall provide, by wire transfer, to the Claims Administrator the Settlement Fund of $99,000,000.00.

8.2     The Settlement Fund will be placed in an interest bearing account (the "Settlement Fund Account") approved by Class Counsel with a unique Taxpayer Identification Number.   Any interest accrued prior to the distribution of any monetary awards will be added to the Class Monetary Award Fund and distributed to Proposed Settlement Class Members according to the procedures set forth herein.

8.3     The Settlement Fund Account will constitute a qualified settlement fund pursuant to Internal Revenue Code Section 1.468B-1.  Upon the opening of the account, Novartis shall execute an election statement provided by the Claims Administrator which shall be affixed to the initial tax return of the Settlement Fund Account in order to establish the start date of the Settlement Fund Account.  The Settlement Fund Account will be

21

created, managed and disbursed by the Claims Administrator under the supervision of Class Counsel and Counsel for Novartis. The Claims Administrator shall be the only entity authorized to make withdrawals or payments from the Settlement Fund Account. Novartis will have no responsibilities or liabilities with respect to the administration of the Settlement Fund Account, including any distribution therefrom and the reporting for such distribution.

8.4     Upon wiring the Settlement Fund amount, Novartis will have no further monetary obligations with respect to Settlement Class Members, Class Counsel or Named Plaintiffs pursuant to the Settlement and shall have no responsibility to make any additional payments pursuant to this Settlement, including with respect to attorneys' fees and costs, with the singular exception of Novartis's responsibility to pay up to $170,000.00 in settlement administration expenses as set forth in Section IX.B.

8.5     The Claims Administrator shall have the obligation to return the entire Settlement Fund (including all income and/or interest generated by the Settlement Fund Account) to Novartis within five (5) business days in the event that this Settlement Agreement is reversed on appeal or is otherwise rendered null and void for any reason. However, any decision by the U.S. Supreme Court in *Christopher v. SmithKline Beecham Corp.* shall not be considered an event which renders this Settlement Agreement null and void or non-binding.

8.6     The Claims Administrator shall distribute the Settlement Fund (including any interest generated by the Settlement Fund Account) pursuant to the provisions below, and on the time schedule described herein and pursuant to orders of the Court.

8.7     In the event that the Settlement Fund is not completely distributed for any reason, including any Settlement Class Member's failure to cash the settlement check within one (1) year, any and all such remaining funds and any interest generated by such funds after the mailing of settlement checks to Settlement Class Members shall revert back to Novartis.  The Claims Administrator shall provide, by wire transfer, any amount to be reverted to Novartis within one (1) year and fifteen (15) business days from the date of distribution of the settlement checks described in Section XI.E below.   The Claims Administrator's determination of any amount to revert back to Novartis pursuant to this provision shall be final and non-appealable.

## IX.     ATTORNEYS' FEES, ADMINISTRATIVE EXPENSES AND SERVICE AWARD PAYMENTS

### A.     Attorneys' Fees.

9.1     Pursuant to Fed. R. Civ. P. 23(h), Class Counsel, in connection with seeking Court approval of the Settlement, shall apply for reasonable attorneys' fees incurred by Class Counsel, including the fees in connection with implementing the Settlement Agreement.

9.2     Novartis will not object to a motion for attorneys' fees by Class Counsel for $400,000.00 allocated for costs and expenses, along with up to thirty percent (30%) of the remaining settlement fund.   This amount includes all fees, costs and expenses in connection with the Civil Action and implementing the Settlement Agreement, including any attorneys' fees, costs and expenses incurred after the date of this Settlement Agreement.

9.3     The Claims Administrator will pay from the Settlement Fund any Class Counsel attorneys' fees ordered by the Court no later than thirty (30) calendar days after the Effective Date.  Prior to the payment of attorneys' fees, Class Counsel will provide the

23

Claims Administrator with Tax Payer Identification Numbers for Class Counsel and executed Form W-9s. Form 1099s shall be provided to Class Counsel for the payments made to Class Counsel. Class Counsel agrees that any allocation of fees between or among Class Counsel shall be the sole responsibility of Class Counsel.

9.4     If the Court awards attorneys' fees in an amount less than the requested fee, the difference will revert back to the Class Monetary Award Fund. If the Court awards attorneys' fees in an amount greater than the requested fee, the difference will be deducted from the Class Monetary Award Fund.

B.     <u>Administrative Expenses.</u>

9.5     Novartis will pay the administrative fees, costs and expenses incurred by the Claims Administrator in connection with administering the Settlement Fund, up to a maximum of $170,000.00. This amount is in addition to, and is not included in, the $99,000,000.00 Settlement Fund. Any administrative expenses incurred by the Claims Administrator in excess of $170,000.00 will be deducted from the Class Monetary Award Fund.

9.6     No later than ten (10) business days prior to the Final Fairness Hearing as scheduled by the Court, the Claims Administrator shall provide Counsel for the Parties with an interim statement detailing its respective fees, costs and expenses incurred in connection with administering the Settlement Fund. At that time, if the Parties and Claims Administrator reasonably anticipate that total claims expenses in connection with administering the Settlement Fund will exceed $170,000.00, the Parties will agree on an amount to be deducted from the Class Monetary Award Fund to pay such expenses. The Parties agree to cooperate in the settlement administration process and to make all

reasonable efforts to control and minimize the costs and expenses incurred in the administration of the Settlement.

9.7     No later than ten (10) business days after the date of distribution of the settlement checks described in Section XI.E below, the Claims Administrator shall provide Counsel for the Parties with a final statement detailing their respective fees, costs and expenses incurred in connection with administering the Settlement Fund, inclusive of any administrative expenses reasonably expected to be incurred after the date of the final statement. Within thirty (30) calendar days after receipt of the Claims Administrator's final statement of administrative expenses, Novartis shall pay such expenses up to $170,000.00. Any administrative expenses in excess of $170,000.00 will be paid from the Settlement Fund as agreed by the Parties and pursuant to this Section.

C.     Service Award Payments to Named Plaintiffs and Deponents

9.8     Subject to Court approval, the Claims Administrator will pay from the Settlement Fund prescribed amounts to Named Plaintiffs and deponents for the substantial time and energy that they have devoted in litigating this lawsuit and the risks they have incurred as a result of their active participation in prosecuting the class claims (collectively "Service Award Payments").

(i)     Subject to Court approval, a Service Award Payment of $40,000.00 each shall be distributed to the original Named Plaintiffs in compensation for their dedicated service in litigating the matter and bringing about this Settlement:

- Simona M. Lopes
- Catherine E. White
- Minel A. Hider-Tobertga

25

(ii)      Subject to Court approval, a Service Award Payment of $20,000 each shall be distributed to the Named Plaintiffs added in the Second Amended Complaint, in compensation for their service in bringing about and carrying out the terms of this Settlement:

- Terri Kelly

- Kelli Shannon

(iii)      Subject to Court approval, a Service Award Payment of $3,500.00 each shall be distributed to the deponents in compensation for their dedicated service in litigating the matter and bringing about this settlement:

- Valerie Bobry
- Deborah Davis
- Wiah Dogbeh
- Geraldine Dominic
- Donald Duritsch
- Kimberly Elliot
- Cynthia Foletta
- Robert Hartshorn
- Marc Hileman
- Demetra Hutchinson
- Rosa Madueno
- Christine Mills
- Curtis Moore
- Jennifer Peldiak
- Abraham Quinones
- Ronni Reiburn
- Christin Robison
- John Rubin
- Amy Velez
- Raymond Watkins
- Eva Winger

(iv)      The Claims Administrator will pay the aforementioned Service Award Payments to Named Plaintiffs and deponents, less applicable withholdings and deductions, if any, within thirty (30) calendar days after the Effective Date.    All individuals receiving Service Award Payments under these paragraphs who are also Settlement Class Members, as defined in Paragraph 2.38 above, are also eligible to receive a monetary award pursuant to Sections X and XI.

9.9     If the Court awards monies less than those set out above, the difference will be allocated to the Class Monetary Award Fund and distributed according to the procedures set forth herein.   If the Court awards monies more than those set out above, the difference shall be deducted from the Class Monetary Award Fund.

## X.     INDIVIDUAL MONETARY AWARDS TO SETTLEMENT CLASS MEMBERS

10.1     Individual monetary awards payable to Proposed Settlement Class Members and Class Representatives pursuant to this Settlement Agreement will be paid as lost wages and will be subject to all applicable taxes and withholdings under federal, state and/or local laws.  Monetary awards for Service Award Payments shall not be treated as lost wages and will be subject to reporting on IRS Form 1099.

10.2     Payments made under this Agreement are not intended to and will not form the basis for additional contributions to, benefits under, or any other monetary entitlement under, or be considered to apply to, or be applied for purposes of, Novartis's bonus, executive compensation, pension, any 401(k) and/or other retirement, savings or benefit plans or similar programs.

10.3     The Settlement Fund less distributions for attorneys' fees and expenses, and Service Award Payments pursuant to Sections IX.A and IX.C, will be allocated to the Class Monetary Award Fund (which includes the employer's share of applicable taxes and withholdings under federal, state and/or local laws to be distributed as follows:

(i)     Each class member's recovery will be calculated by a formula that accounts for (a) tenure, (b) whether the individual's total annual compensation risked a highly-compensated employee defense under applicable state or federal law; (c) the applicable state or federal statute of limitations; and (d) whether the individual is a

27

member of the Settlement Sub-Classes as defined in Paragraphs 2.3 2.18 or 2.25, who were parties to the original Civil Action; or Paragraphs 2.21 or 2.35, who joined the Civil Action by means of the Second Amended Complaint.

(ii)     A fixed monthly amount for monetary payments ("Monthly Amount") will be calculated by dividing the Class Monetary Award Fund by the total months worked by the Class Representatives and Proposed Settlement Class Members in Class-Eligible Jobs as defined in Paragraph 2.9 during each Settlement Sub-Class Payment and Release Period, with a 2-to-1 ratio applied to Non-HCE Months and a 6-to-1 ratio applied to months worked by employees who are members of the Settlement Class as defined in Paragraphs 2.3, 2.18 and 2.25. The formula for determining the Monthly Amount and factors taken into account in devising the formula is attached as Exhibit E.

(iii)     A Class Representative or Proposed Settlement Class Member will receive an amount equal to the Monthly Amount, multiplied by the number of months the Proposed Settlement Class Member worked in a Class-Eligible Job during the applicable Settlement Sub-Class Eligibility Period, multiplied by a 2 multiplier for Non-HCE Months and a 6 multiplier for those recovering as a part of the Settlement Class defined in Paragraphs 2.3, 2.18 and 2.25, less applicable withholdings and deductions as described below. The formula for determining the Monthly Amount and factors taken into account in devising the formula is attached as Exhibit D.

(iv)     The Claims Administrator will withhold from each Class Representative and Proposed Settlement Class Member's monetary award both the employee's and employer's share of applicable taxes and withholdings under federal, state and/or local laws. The Claims Administrator will ensure that such monies withheld

are paid to the appropriate authorities for each Settlement Class Member and Class Representative and will issue IRS Forms W-2 for the amounts reportable on each Form.

(v)     No portion of the Class Monetary Award Fund will revert back to Novartis unless a Settlement Class Member fails to cash his or her settlement check within one (1) year.

(vi)     No affirmative conduct or participation by a Proposed Settlement Class Member who meets any of the FLSA I, New York I, California I and/or Remaining States Settlement Sub-Class definitions is required to receive a monetary award.  To receive a monetary award payment, an FLSA Settlement Sub-Class II Member must opt in to the Settlement by timely submitting an Opt In and Release Form, as set forth in Paragraph 11.4.

## XI.     CLAIMS ADMINISTRATION

A. Claims Administrator's Duties.

11.1     The Claims Administrator shall (1) mail the Notices of Class and Collective Action Settlement (the "Notices") to Proposed Settlement Class Members; (2) respond to questions from Proposed Settlement Class Members; (3) perform monetary award distribution calculations as set forth in Paragraph 10.3; (4) maintain a toll-free number for communicating with Proposed Settlement Class Members; (5) mail checks containing payments to Named Plaintiffs, deponents, Settlement Class Members and Class Counsel; (6) wire any amount from the Settlement Fund which reverts back to Novartis; and (7) perform any other duties necessary to fulfill its responsibilities described in this Agreement.

B.     Class and Collective Action Notices.

11.2     No later than February 10, 2012, the Company shall provide to the Claims Administrator a list of all Proposed Settlement Class Members, including name, employee ID, job title, Work State(s), last known address and telephone number. The Company will provide this information in a format reasonably acceptable to the Claims Administrator. The Claims Administrator will maintain this list in the strictest confidence and shall not disclose it to anyone except Class Counsel, who may use it only for purposes of administering this Settlement. Class Counsel may provide updates on any addresses or contact information provided by the Proposed Settlement Class Members to the Claims Administrator, and such updates shall be incorporated into the list. This initial list will be used solely for the purpose of mailing the Notices of Class and Collective Action Settlement, and shall not be the basis on which any individual monetary awards amounts are determined or distributed pursuant to Section X.

11.3     No later than February 24, 2012, the Claims Administrator shall mail the Notices in substantively the form attached hereto as Exhibits A-C to all Proposed Settlement Class Members (Exhibit B includes the Opt In and Release Form to FLSA Settlement Sub-Class II Members) as approved by the Court, by United States first class mail, postage prepaid with a postmark date stamped on the envelope of the Notice. The Parties intend to provide actual notice to each Proposed Settlement Class Member, to the extent practicable.

11.4     Opt In and Release Forms must be completed by FLSA Settlement Sub-Class II Members in full and signed in order to be valid. The Claims Administrator shall provide Class Counsel and Counsel for Novartis with a copy of all Opt In and Release

Forms on a weekly basis.  Class Counsel shall promptly file all timely and complete Opt In and Release Forms with the Court.    Individuals who meet the definition of the FLSA Settlement Sub-Class II who do not submit a complete Opt In and Release Form are not entitled to any monetary award under this Settlement Agreement.    Settlement Class Members in the FLSA I, California I, New York I and Remaining States Settlement Sub-Classes are not required to submit an Opt In and Release Form and any submission of an Opt In and Release Form by any such Settlement Class Member will have no effect whatsoever on his or her monetary award.

11.5    In order to provide the best notice practicable, the Claims Administrator will do the following before mailing the Notices: (1) run the list of all Proposed Settlement Class Members through the United States Postal Service's National Change of Address database ("NCOA"); and (2) perform address searches using public and proprietary electronic resources which collect their data from various sources such as utility records, property tax records, motor vehicle registration records (where allowed) and credit bureaus.

11.6    If envelopes from the mailing of the Notices are returned with forwarding addresses, the Claims Administrator will re-mail the Notice to the new address within three (3) business days of receiving the returned envelope.

11.7    Class Counsel shall provide the Court, no later than May 25, 2012, a declaration by the Claims Administrator of due diligence and proof of mailing with regard to the mailing of the Notices of Class and Collective Action Settlement to Proposed Settlement Class Members and a list of Proposed Settlement Class Members for whom notices were returned as undeliverable and for whom efforts to obtain an alternative address failed.

31

11.8     In the event that any of the Notices of Class and Collective Action Settlement are returned to the Claims Administrator by the United States Postal Service because the address of the recipient is no longer valid, i.e., the envelope is marked "Return to Sender," the Claims Administrator shall perform a standard skip trace in an effort to attempt to ascertain the current address of the particular Proposed Settlement Class Member in question and, if such an address is ascertained, the Claims Administrator will re-send the Notice within three (3) business days of receiving the newly ascertained address; if no updated address is obtained for that Proposed Settlement Class Member, the Notice shall be sent again to the Proposed Settlement Class Member's last known address. In either event, the Notice shall be deemed received once it is mailed for the second time unless the Proposed Settlement Class Member can demonstrate good reason why he or she did not receive it.

11.9     With respect to envelopes marked "Return to Sender," the Claims Administrator will also call any identified last-known telephone numbers (and telephone numbers updated through public and proprietary databases) of Proposed Settlement Class Members to obtain their current addresses.

11.10    The Claims Administrator shall provide to Counsel for Novartis and Class Counsel, no later than May 17, 2012, a list of Proposed Settlement Class Members for whom notices were returned as undeliverable and for whom efforts to obtain an alternative address failed.

11.11    No later than March 16, 2012, the Company shall provide to the Claims Administrator an updated list of all Proposed Settlement Class Members, including name, employee ID, job title, specific employment dates in a Class-Eligible Job and corresponding

Work State(s), last known address and telephone number. This updated list will be used to determine the individual time periods within the Term of the Settlement Agreement during which each Proposed Settlement Class Member worked in a Class-Eligible Job in his or her applicable Payment and Release Period, for the purposes of implementing the distribution procedure set forth in Paragraph 10.3 and as the basis on which any individual monetary awards amounts are determined or distributed pursuant to Section X. This list will be finally updated by Novartis as soon as practicable after the Final Approval Date. As with the initial list provided by Novartis pursuant to Paragraph 11.2, the Company will provide this information in a format reasonably acceptable to the Claims Administrator, the Claims Administrator will maintain this list in the strictest confidence and shall not disclose it to anyone except Class Counsel, who may use it only for purposes of administering this Settlement, and Class Counsel may provide updates on any addresses or contact information provided by the Proposed Settlement Class Members to the Claims Administrator, and such updates shall be incorporated into the list.

11.12    The Claims Administrator shall determine, based on the information provided by Novartis pursuant to Paragraph 11.11, the amount of the individual monetary award to be paid to each Proposed Settlement Class Member pursuant to Section X. All final determinations of the Claims Administrator shall be binding and non-appealable. The Claims Administrator shall keep its determinations confidential and will disclose such determinations only to Counsel for the Parties and the Court, if appropriate, and shall not disclose the number and/or identity of the Proposed Settlement Class Members or the amount of their individual monetary award except as provided for in this Settlement Agreement or otherwise required by law.

11.13     In the event a Proposed Settlement Class Member disputes the accuracy of the underlying employment data upon which his or her individual monetary award is determined or the means by which his or her monetary award was calculated by the Claims Administrator, the Claims Administrator will attempt to resolve the dispute and will consult with Class Counsel and Counsel for Novartis if necessary and appropriate.  The Company's existing personnel and payroll records shall be presumed to be correct with respect to Proposed Settlement Class Members' job title, employment dates and Work State.  In order to overcome this presumption, Class Counsel or a Proposed Settlement Class Member must, within a reasonable period prior to the final calculation of monetary awards, submit documentary evidence showing that the Company's records are inaccurate and that corrected information should be used.  As stated above, all final determinations of the Claims Administrator shall be binding and non-appealable.

C.     Objections.

11.14     Pursuant to Federal Rule of Civil Procedure 23, Proposed Settlement Class Members in the New York I, California I and Remaining States Settlement Sub-Classes may object to the Settlement.

11.15     All objections must be submitted in writing, and must include a detailed description of the basis of the objection.

11.16     Objections must be filed with the Court, with copies served on the Claims Administrator, Class Counsel and Counsel for Novartis, no later than April 16, 2012.  Any objections not made in the manner specified above shall be deemed to have been waived.

11.17     No one may appear at the Final Fairness Hearing for the purpose of objecting to the Settlement without first having filed and served an objection in writing no later than April 16, 2012.  Any lawyer representing a party for the purpose of making

34

objections must also file a Notice of Appearance with the Court by the objection deadline and must also serve copies by mail to Counsel for the Parties by the objection deadline set forth above.

     11.18    An objector may withdraw his or her objection at any time.

     D.    <u>No Exclusions for FLSA I, New York I and California I Settlement Sub-Class Members.</u>

     11.19    Pursuant to the collective and class action certification notices disseminated to Proposed Settlement Class Members in the Civil Action, as described below, all FLSA I, New York I and California I Settlement Sub-Class Members have been deemed to agree to be bound by the judgment in the Civil Action and will not have the opportunity to exclude themselves from the Settlement.

     11.20    The 2007 FLSA collective action certification notice in this Civil Action stated that "plaintiffs who choose to join the Civil Action will be bound by the judgment or settlement, whether it is favorable or unfavorable," and designated Class Representatives as agents to make binding decisions on plaintiffs' behalf concerning the litigation. Each FLSA Settlement Sub-Class I Member, as defined in Paragraph 2.18 filed a Consent to Join as Party Plaintiff form with the Court and is bound by the Settlement.

     11.21    The 2007 New York class action certification notice in this Civil Action stated that "[a]ny New York class member who does not timely opt out will be included in this New York Class action lawsuit and will be bound by judgment in this Lawsuit whether favorable or unfavorable." Each New York Settlement Sub-Class I Member, as defined in Paragraph 2.25, did not timely opt out of the Civil Action and is bound by the Settlement.

     11.22    The California class action certification notice in this Civil Action stated that "[a]ny California Class Member who does not timely opt out will be included in this

35

California Class action lawsuit and will be bound by judgment in this Lawsuit whether favorable or unfavorable." Each California Settlement Sub-Class Members, as defined in Paragraph 2.3, did not timely opt out of the Civil Action is bound by the Settlement.

E.   Exclusion Opportunity for Remaining States Settlement Sub-Class Members.

11.23   Proposed Settlement Class Members in the Remaining States Settlement Sub-Class may exclude themselves, or opt out, of the Settlement. Any Proposed Settlement Class Member in this Settlement Sub-Class who wants to opt out of the Settlement Class may file a timely request for exclusion pursuant to the provisions described in the Notices of Class Action Settlement. Such written request for exclusion must contain the name, address and telephone number of the person requesting exclusion. The opt-out request must be personally signed by the Proposed Settlement Class Member who seeks to opt out. No opt-out request may be made on behalf of a group of Proposed Settlement Class Members. The request for exclusion must contain the statements described in the Notices of Class Action Settlement, and must be sent by mail or courier to the Claims Administrator so that it is actually postmarked (or received, if by courier) no later than April 16, 2012. The postmark date of the mailing envelope shall be the exclusive means used to determine whether a mailed request for exclusion (opt-out) has been timely submitted. Any person who timely submits such a request for exclusion shall be barred from participation in the Settlement, and shall receive no benefit from the Settlement. The Claims Administrator shall provide Class Counsel and Counsel for Novartis with a copy of all opt-out statements on a weekly basis. Class Counsel shall file with the Court all timely opt-out statements. Individuals who file a timely opt-out statement are not entitled to any monetary award under this Settlement Agreement.

F.      Class Monetary Award Distribution Procedure.

11.24      No later than (20) calendar days after the Effective Date, the Claims Administrator shall provide Novartis and Class Counsel with a list of names and social security numbers of Settlement Class Members to whom a monetary award is due and the amount of each Settlement Class Member's monetary award.

11.25      No later than thirty (30) calendar days after the Effective Date, the Claims Administrator shall cause to be mailed, via certified mail, return receipt requested, the monetary award checks to Settlement Class Members.  If possible, for Settlement Class Members who will also receive a Service Award Payment, the awards are to be combined in one mailing along with any appropriate 1099 forms to the Settlement Class Members to whom a Service Award Payment is due.

11.26      If a Settlement Class Member to whom a payment is due is deceased at the time of such distribution hereunder, the amount payable to such deceased Settlement Class Member shall be paid to his or her estate, provided that the estate provides an appropriate certification to the Claims Administrator.

11.27      The face of each monetary award check to Settlement Class Members to whom a payment is due shall clearly state that the check must be cashed within one (1) year. All payment checks distributed by the Claims Administrator must be accompanied by a cover letter stating words in bold to the effect that "the check must be cashed within one (1) year or it will become void." The back of each check will contain a legend stating: "By negotiating this check and accepting payment I agree that I have waived and released the Released Parties from all Released Claims as defined in the Settlement Agreement and in the Notice in this matter.  This Release is effective as of the Effective Date."

## XII.   NOVARTIS'S   RIGHT   TO   WITHDRAW   OR   MODIFY   THE   AGREEMENT

12.1     If a total of five (5) percent (5%) or more Proposed Settlement Class Members in the Remaining States Settlement Sub-Classes submit timely and complete requests for exclusion, Novartis shall have the absolute right, in its sole discretion and notwithstanding any other provisions of this Agreement, but subject to all the provisions and time limits of this Section, to withdraw in writing from this Agreement, or to modify this Agreement through further negotiations with Class Counsel. If Novartis does withdraw in conformity with the provisions and time limits of this Section, the Agreement will be null and void for all purposes and may not be used or introduced in further litigation except to determine whether Novartis is entitled to withdraw from the Agreement and has validly done so.

12.2     The Claims Administrator shall each calendar week notify Counsel for Novartis and Class Counsel by fax or e-mail of the number of individuals who have to that date submitted timely and complete requests for exclusion, and at the same time shall send to said Counsel by fax, e-mail or by overnight delivery copies of all the timely and complete requests for exclusion which Class Counsel has received.  Novartis shall have until May 21, 2012 to withdraw from (or modify through negotiation) this Agreement on the basis that a total of five (5) percent (5%) or more Proposed Settlement Class Members in the Remaining States Settlement Sub-Class have submitted timely and complete requests for exclusion.

## XIII.   DUTIES OF THE PARTIES PRIOR TO COURT APPROVAL

13.1     Promptly upon execution of this Agreement, but by no later than ten (10) calendar days thereafter, the Parties jointly shall apply to the Court for the entry of an order (the "Preliminary Approval Order"):

(i)     Preliminarily approving the Agreement, as well as the payment of attorneys' fees and Service Award Payments described in this Agreement;

(ii)    Approving as to form and content the proposed Notices of Class and Collective Action Settlement;

(iii)   Directing the mailing of the Notices by first class mail to the Proposed Settlement Class Members;

(iv)    Certifying the Settlement Class; and

(v)     Scheduling a Final Fairness Hearing on May 31, 2012 on the question of whether the proposed settlement should be finally approved as fair, reasonable and adequate as to the Settlement Class Members.

13.2    In applying for the entry of the Preliminary Approval Order, Class Counsel and Counsel for Novartis will jointly submit to the Court for its approval this Settlement Agreement and exhibits, and will include proposed forms of all notices and other documents as attached hereto necessary to implement the Settlement Agreement.

13.3    In computing any period of time prescribed or allowed by this Settlement Agreement, unless otherwise stated, such computation or calculation shall be made consistent with Federal Rule of Civil Procedure 6(a).

## XIV.  DUTIES OF THE PARTIES IN CONNECTION WITH FINAL COURT APPROVAL

14.1    In connection with the Final Approval by the Court of this Settlement Agreement, Class Counsel and Counsel for Defendant will submit a proposed final order and judgment:

(i)     Granting final approval to the Settlement Agreement, adjudging all terms thereof to be fair, reasonable and adequate, and directing consummation of its terms and provisions;

(ii)    Dismissing the Civil Action with prejudice and permanently barring all members of the Settlement Class, including the Class Representatives, from prosecuting against any Released Parties any of the Released Claims; and

39

(iii)  Ordering that all materials containing Confidential or Highly Confidential Information pursuant to the Protective Order entered in the Civil Action shall be returned to the producing party or destroyed by the party to whom those materials were produced within sixty (60) calendar days after the Effective Date, with the exception that the Parties may retain copies of their work product, and litigation files, and copies of all filed documents (whether or not filed under seal or submitted to the court without being officially filed); except that all documents and materials designated Highly Confidential shall be returned to Novartis or Novartis's Counsel, who shall retain and maintain that information in the form in which it is returned during the term of this Settlement Agreement.

## XV.  PARTIES' AUTHORITY

15.1  The signatories hereby represent that they are fully authorized to enter into this Agreement and to bind the Parties and the Proposed Settlement Class Members to the terms and conditions hereof.

15.2  All of the Parties acknowledge that through this Settlement Agreement and its attachments, they and the Proposed Settlement Class Members are being advised that they may consult an attorney regarding their participation in this Agreement, and the Parties acknowledge that they in fact have been represented by competent, experienced Counsel throughout all negotiations that preceded the execution of this Agreement, and this Agreement is made with the consent and advice of Counsel who have jointly prepared this Agreement.

15.3  All of the Parties and Proposed Settlement Class Members acknowledge that they are participating voluntarily and knowingly in exchange for the consideration described herein. The Parties and Proposed Settlement Class Members further acknowledge that they were provided with a reasonable period of time within which to consider this Agreement.

## XVI.   <u>NOTICES</u>

16.1     Unless otherwise specifically provided herein, all notices, demands or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing by United States registered or certified mail, return receipt requested, addressed as follows:

To the Class Representatives or to any Proposed Settlement Class Member:

> **SANFORD WITTELS & HEISLER, LLP**
> David Sanford, Esq.
> Katherine Kimpel, Esq.
> 1666 Connecticut Avenue, Suite 300
> Washington, D.C. 20009

To the Defendant:

> **CRAVATH, SWAINE & MOORE LLP**
> Evan R. Chesler, Esq.
> Darin P. McAtee, Esq.
> 825 Eighth Avenue
> New York, NY 10019

## XVII.   <u>CONFIDENTIALITY AND PUBLIC COMMENT</u>

17.1     Nothing in this Agreement shall be construed to permit anyone (including Class Counsel and the Claims Administrator) to make public Novartis's confidential personnel information.   Nor will any provision require Novartis to make public such information.

17.2     Other than necessary disclosures made to the Court, the content of the Parties' settlement negotiations shall be held confidential by Counsel for Novartis, Novartis, Class Counsel, Class Representatives and Proposed Settlement Class Members.

17.3     Counsel for Novartis, Novartis, Class Counsel, Class Representatives and all Parties shall not disclose to any third party, including but not limited to communications

on the internet (e.g., postings on personal or public websites such as social networking sites and blogs) or by means of any electronic or print media, any information about any aspect of the settlement, including the content of the settlement negotiations and individual monetary awards, subject to the following exceptions:

(i)      Nothing in the above shall limit Class Counsel's right to communicate with Proposed Settlement Class Members.   Class Counsel may communicate about the content of the settlement negotiations with Proposed Settlement Class Members for purposes of implementing, administering and enforcing the Settlement, and Class Counsel may respond to inquiries they respectively receive from Proposed Settlement Class Members.   In addition, the Class Representatives may communicate about the content of the settlement negotiations with Proposed Settlement Class Members for purposes of implementing, administering and enforcing the Settlement as provided herein.   Permitted communications with Proposed Settlement Class Members include but are not limited to communications regarding the Settlement posted on Class Counsel's firm web site, provided those communications are approved in advance by Counsel for Novartis and made for one or more of the purposes enumerated in this paragraph;

(ii)      Proposed Settlement Class Members and Class Representatives may share the details of their receipt of monetary awards with their tax advisor for the purpose of preparing income tax returns;

(iii)      Novartis may communicate with those persons, including Novartis employees, necessary for the administration, implementation, and enforcement of the Settlement, and may inform its employees of the Settlement;

42

(iv)     Novartis may make public disclosures in accordance with securities law or for other regulatory purposes and may communicate with those persons necessary for the preparation and dissemination of such public disclosures; and

(v)     Novartis senior management may discuss the settlement with executives from other pharmaceutical companies as necessary and appropriate in response to inquiries about the settlement, provided however that any such discussions shall be confidential and shall not involve any members of the press.

(vi)     The Parties will agree upon language for a joint press release announcing the Settlement upon an agreed date not before the filing of the request for Preliminary Approval with the Court; neither Party will separately issue its own press release, separately communicate with members of the press (except to the extent that any comment made by either Party contains language pre-approved by the other Party and where such approval will be negotiated in good faith) or act as the source of media coverage regarding about any aspect of the Settlement at any time. Nothing in this or any other provision of this Agreement should be construed to prohibit Class Counsel from posting, with approval of Counsel for Novartis, information about the Settlement on the Sanford Wittels & Heisler firm web site for the purpose of communicating with Proposed Settlement Class Members in accordance with the provisions of ¶ 17.3(i), *supra*;

17.4     Class Counsel agrees to use all contact and employment information for Proposed Settlement Class Members that is provided to it by the Claims Administrator and Counsel for Novartis solely for purposes of implementing this Agreement and for no other purpose, at any time, or for any reason.   Class Counsel specifically agrees not to use any contact or employment information provided by Novartis at any time in reaching or

43

implementing this Settlement for any purpose in any other pending or future litigation against Novartis.

## XVIII. <u>MODIFICATION</u>

18.1     This Agreement and its attachments may not be terminated or substantively changed, altered or modified, except in writing and signed by the Parties and approved by the Court.

## XIX.   <u>ENTIRE AGREEMENT</u>

19.1     This Agreement and its exhibits and attachments constitute the entire agreement between the Parties and Proposed Settlement Class Members concerning the subject matter hereof.  No extrinsic oral or written representations or terms shall modify, vary or contradict the terms of this Agreement.  In the event of any conflict between this Agreement and any other Settlement-related document, the Parties and Proposed Settlement Class Members intend that this Agreement shall be controlling.

## XX.   <u>INTERPRETATION</u>

20.1     This Agreement shall be construed as a whole according to its fair meaning and intent, and not strictly for or against any party, regardless of who drafted or who was principally responsible for drafting this Agreement or any specific term or condition thereof.

## XXI.   <u>CHOICE OF LAW AND JURISDICTION</u>

21.1     This Agreement and the exhibits thereto shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of New York, and the rights and obligations of the Parties to this Agreement shall be subject to, governed by, construed, enforced, and administered in accordance with the laws of the State of New York, without giving effect to that State's choice-of-law principles.

21.2     The Court, and any appellate court from which appeals of the Court's decisions may properly be brought, shall retain jurisdiction solely for the purpose of the implementation, interpretation and enforcement of the terms of this Agreement, and all Parties hereto and their counsel shall submit to the exclusive jurisdiction of the Court solely for purposes of implementing, interpreting and/or enforcing the Settlement embodied in this Agreement and for the resolution of all disputes arising out of or in relation to this Agreement.

21.3     Nothing in this Section shall be construed as an admission that New York is a proper venue to litigate any overtime claim(s) other than those at issue in the Civil Action and resolved in this Settlement Agreement.

## XXII. COUNTERPARTS

22.1     This Agreement may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Agreement, which shall be binding upon and effective as to all Parties and Proposed Settlement Class Members.

## XXIII. VOIDING THE AGREEMENT

23.1     In the event this Agreement, or any amended version agreed upon by the Parties, does not obtain judicial approval for any reason, this Agreement shall be null and void in its entirety, unless expressly agreed in writing by all Parties.  Each Party shall also have the right to unilaterally render the entire Agreement void and unenforceable if any Court orders any material alteration of the terms of this Agreement.   In the event this Agreement becomes null and void for any reason, Novartis, Counsel for Novartis, the Class Representatives, and Class Counsel agree that they shall from that date forward keep strictly

confidential the terms of the Agreement, the existence of the Agreement, any information concerning the Agreement, or any of the discussions and or negotiations regarding the Agreement.

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement as of the date indicated below:

Dated: January 25, 2012

David Sanford
Jeremy Heisler
Katherine Kimpel
Grant Morris
Deborah Marcuse
Andrew Melzer
**SANFORD WITTELS & HEISLER, LLP**
1666 Connecticut Ave., NW, Suite 300
Washington, D.C. 20009
Tel. (202) 742-7780
Fax (202) 742-7776

*Counsel for Plaintiffs and the Settlement Class*

Dated: January 25, 2012

Evan R. Chesler
Darin P. McAtee
**CRAVATH, SWAINE & MOORE LLP**
825 Eighth Avenue
New York, NY 10019
Tel.: (212) 474-1243
Fax: (212) 474-3700

Randolph S. Sherman
**KAYE SCHOLER LLP**
425 Park Avenue
New York, NY 10022
(212) 836-8000

*Counsel for Defendant Novartis Pharmaceuticals Corporation*

46